UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNNY RHINEHARDT,

        Plaintiff,

v.

                                    Case No. 11-12186
CHARLES YOUNKIN                   Honorable Julian Abele Cook, Jr.

        Defendant.

## ORDER

The Plaintiff, Johnny Rhinehardt, filed this civil rights action under 42 U.S.C. § 1983, in which he has accused the Defendant, Charles Younkin, a law enforcement officer in Warren, Michigan, of using excessive force against him. Younkin has now filed a motion for summary judgment, arguing that he is protected from liability by the doctrine of qualified immunity as a police officer.

I.

During the early morning hours of March 31, 2010, Rhinehardt was arrested at his home in Warren, Michigan, and involuntarily removed therefrom to a local police station where he was photographed and fingerprinted. According to Younkin, Rhinehardt was completely uncooperative throughout the entire booking process, verbally threatened the government and other officers, and raised his hand into a clenched fist and the shape of a gun. (Younkin Dep.10:21-12:24, Nov. 9, 2011, Copy at Ex. B to Def.'s Mot. for Summ. J.). Rhinehardt disputes these allegations, claiming that -

other than verbally expressing his opinions during the booking process - he complied with the officers. (Rhinehardt Dep. 32:15-33:16, Dec. 12, 2011, Copy at Ex. A to Def.'s Mot. for Summ. J.). At the conclusion of the booking process, Rhinehardt was taken to a nearby holding cell by Younkin and his partner. Again, Younkin and Rhinehardt have sharply differing views of the events which followed.

Younkin's version is as follows: Rhinehardt verbally threatened the two officers during the walk to the cell. (Younkin Dep. 13:10-14). When Rhinehardt pulled away from the officers, Younkin feared for his safety given Rhinehardt's earlier uncooperative behavior. (*Id.* at 13:16-20). As a result, Younkin discharged his taser into Rhinehardt's back. (*Id.* at 13:24). Rhinehardt fell to the floor but continued to threaten the officers, move his legs, and resist their attempts to get him under control. (*Id.* at 14:20-15:4). Thus, Younkin discharged the taser a second time into Rhinehardt's leg. (*Id.* at 15:7-11). A security camera videotaped the encounter - though without audio recording - and Younkin claims the video confirms this story. (Security video, frames 1042-2295, 2302-2373, Copy at Ex. D to Def.'s Mot. for Summ. J.).

Rhinehardt has a much different version of his encounter with Younkin: He did not resist or struggle against the officers during the walk to the cell. (Rhinehardt Dep. 34:20-23, 37:8-11). Younkin threatened him, forced him face-first against a wall in the hallway, and fired the taser into his back without warning. (*Id.* at 35:3-5; Rhinehardt Interrog. 17, Copy at Ex. 6 to Pl.'s Resp.). Rhinehardt was already on the ground, immobile, when Younkin discharged the taser into him again, this time into his legs. (Rhinehardt Dep. 35:14-16; Rhinehardt Interrog. 10). Rhinehardt claims the video confirms this description of events. (Security video, frames 2302-2373).

II.

To assess the merit of Younkin's motion for summary judgment, the court turns to Rule 56(a) of the Federal Rules of Civil Procedure, which sets the standard for evaluating a request for the entry of a summary judgment: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When considering a motion for summary judgment, the court must construe all evidence in favor of the non-moving party. *Matsuchita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, if there is video evidence, and "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In a motion for summary judgment, the moving party must first point to the portions of the record which reflect the absence of a genuine issue of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under such a circumstance, the nonmoving party must "come forward with some probative evidence to support [his] claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at

3

256. The non-moving party must do more than raise a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III.

Rhinehardt filed this § 1983 action seeking to impose liability on Younkin for violating his Fourth Amendment right not to be subject to excessive force. Section 1983 provides that every person acting "under color of any statute, ordinance, regulation, custom, or usage" who "subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." Thus, in order to establish a viable claim under this statute, a plaintiff must set forth facts that, when construed in his favor, establish "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).[1]

Younkin contends that he should be granted a summary judgment on the theory that this lawsuit is precluded by his qualified immunity as a police officer. Qualified immunity is an

---

[1] Here, it is clear that Younkin, in his capacity as a police officer, acted under color of state law. Therefore, the Court focuses only on the first prong of the § 1983 analysis.

"immunity from suit rather than a mere defense to liability" that "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Government officials, including police officers, receive qualified immunity from § 1983 claims unless (1) the facts - taken in the light most favorable to the plaintiff - show that the officer's conduct violated a constitutional right, and (2) the right was clearly established at the time of the act. *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[2] A court, when attempting to determine whether the doctrine of qualified immunity is applicable, can examine either prong of the test first. *Pearson*, 555 U.S. at 236. "'[W]here the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability,' and thus summary judgment should not be granted." *Griffith v. Coburn*, 473 F.3d 650, 656-57 (6th Cir. 2007) (quoting *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) (internal citations omitted)).

Beginning with the first prong of the qualified immunity inquiry, Younkin argues that he violated no constitutional right. It is well-established that a right protected by the Fourth Amendment, which protects persons against "unreasonable searches and seizures," U.S. Const. Amend. IV, is the right to be free from excessive force in the course of an arrest.[3] *See, e.g.*, *Graham v. Connor*, 490 U.S. 386 (1989). This right exists not only during an arrest, but extends "throughout

---

[2]Thus the first prong of the qualified immunity inquiry in this case is the same as the first prong of the § 1983 claim; namely, whether Younkin violated Rhinehardt's constitutional rights.

[3] The Fourth Amendment has been incorporated into the Due Process Clause of the Fourteenth Amendment and is applicable against the states. *See Wolf v. Colorado*, 338 U.S. 25, 28 (1949), *overruled on other grounds by Mapp v. Ohio*, 367 U.S. 643 (1961).

the time the person remains in the custody of the arresting officers." *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002) (quoting *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988)). Whether an action rises to the level of "excessive force" is determined by an "objective-reasonableness standard" viewed from the perspective of a reasonable officer on the scene. *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 395-96 (1989)). This inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition," *Saucier*, 533 U.S. at 201 (2001), and while it looks at the "totality of the circumstances," it particularly takes into account three factors; namely, (1) the severity of the criminal act at issue, (2) whether the suspect poses an immediate threat to the safety of officers or others, and (3) whether he is attempting to resist arrest, *Graham*, 490 U.S. at 396.

The Sixth Circuit has also recognized that the use of force after a suspect has been "incapacitated or neutralized" is excessive force as a matter of law. *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006); *see also Bultema v. Benzie County*, 146 F. App'x 28, 37 (6th Cir. 2005) ("totally gratuitous blow" to a suspect who is handcuffed and offering no resistance violates the Fourth Amendment); *Goebel v. Taser Int'l, Inc.*, No. 5:07 CV 0027, 2007 U.S. Dist. LEXIS 68560, at *23 (N.D. Ohio, Sept. 14, 2007) ("The Sixth Circuit has also held for more than twenty years that it is clearly established in this circuit that 'a totally gratuitous blow' to a suspect who is handcuffed and offering no resistance violates the Fourth Amendment.").

Here, considering the totality of the circumstances, the Court finds that a reasonable jury could find that Younkin used excessive force in both tasering incidents because Rhinehardt was "neutralized" and complying with the police officers when he was tasered. Younkin argues that his actions were "objectively reasonable" both times he tasered Rhinehardt because Rhinehardt was

actively resisting him; Rhinehardt argues he was complying with the officers both times that Younkin tasered him. After viewing the video, the Court finds that a reasonable jury could agree with Rhinehardt's version of the facts, interpret his actions as antsy but compliant, and find him under Younkin's control the first time Younkin tasered him. In the video, Rhinehardt is moving quickly, but it would be reasonable to interpret that movement as the officers pushing Rhinehardt, ultimately into the wall, as he claims.

The Court further finds that if a jury concluded that Rhinehardt was "neutralized" and under Younkin's control when he was initially tasered, it would be hard-pressed to say he was not under Younkin's control when he was tasered the second time, while lying on the floor. Moreover, a reasonable jury could see him lying on the floor and consequently find that he was "neutralized" even if it found he was not neutralized before the first time he was tasered. Thus, a jury could find that Rhinehardt was neutralized under *Baker*, or that he did not pose any threat to the officers and was not attempting to resist them under *Graham*. In either case, because the legal question of whether Younkin violated Rhinehardt's constitutional right against being subject to excessive force during the course of an arrest depends on which version of the facts - both of which are plausible in light of the existing evidence - one accepts, the question must be decided by a jury. *Griffith*, 473 F.3d at 656-57.[4]

---

[4] Even if a jury found that Rhinehardt was not neutralized during either tasing incident, it could still find that both taserings failed the "objective reasonableness" test and thus were excessive because Younkin gave no warning before activating the taser. An officer's failure to warn a suspect prior to deploying a taser can weigh heavily in favor of a finding of excessive force. *Cockrell v. City of Cincinnati*, No. 10-4605, 2012 U.S. App. WL 573972, at *7 (6th Cir. Feb. 23, 2012) (Cole, J., concurring) (listing cases). There is no indication in the record that Younkin warned Rhinehardt before tasing him, and Rhinehardt claims Younkin gave no such warning. (Rhinehardt Interrog. 9). Moreover, Younkin's partner testified that he did not recall if Younkin had given a warning before deploying the taser. (Priemer Dep. 16:10-20, Nov. 9, 2011,

The Court now turns to the second prong of the qualified immunity inquiry; namely, whether the constitutional right was clearly established at the time of the incident. That using force after a suspect is "neutralized" or "incapacitated" is unconstitutionally excessive as a matter of law was established at least by 2006, four years before this incident. *See, e.g.*, *Baker*, 471 F.3d at 607. Similarly, several years before the incident here at issue, the Sixth Circuit had established that "the right to be free from physical force when one is not resisting the police is a clearly established right." *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008) (citing *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004)). Thus, the constitutional right that Rhinehardt alleges to have been violated was clearly established at the time of the incident. The Court must deny Younkin's motion because Rhinehardt has met his burden of overcoming the assertion of qualified immunity with respect to the second prong of the analysis and there remains a question of fact regarding the first.[5]

## IV.

For these reasons, the Court denies Younkin's motion for summary judgment.

IT IS SO ORDERED.

---

Copy at Ex. C to Def.'s Mot. for Summ. J.). However, in light of his statement that he did not know that Younkin was going to taser Rhinehardt until he saw his partner brandish the taser (*id.* at 14:15-16, 16:11-14) , a reasonable jury could easily believe that no warning was given.

[5]Younkin briefly suggests that he should be granted summary judgment because Rhinehardt cannot prove the necessary element of the § 1983 claim that Younkin violated Rhinehardt's constitutional rights. To the extent that Younkin is making this argument, it must fail. As explained above, a reasonable jury could find that Younkin violated Rhinehardt's constitutional right to be free from excessive force. Thus, the Court will not grant summary judgment based on the argument that there was no constitutional violation and thus no valid § 1983 claim.

Date: September 19, 2012                                  s/Julian Abele Cook, Jr.
                                                                           JULIAN ABELE COOK, JR.
                                                                           U.S. District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 19, 2012.

                                                                                                s/ Kay Doaks
                                                                                                Case Manager